IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICK ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | 8:16CV177 |
| | ) | |
| v. | ) | |
| | ) | |
| BRIDGEPORT PUBLIC SCHOOLS, a public school district in Nebraska, CHUCK LAMBERT, in his official capacities, JUSTIN CORMAN, in his official capacities, LINDA NORMAN, in her official capacities, KAY ANDERSON, in her official capacities, SCOTT LINDERS, in his official capacities, JEFF POHL, in his official capacities, CRAIG BARNETTE, in his official capacities, MATTHEW ASCHE, in his official capacities, and DAVID MILLER, in his official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff filed his Complaint (Filing No. 1) in this matter, and this court has given him leave to proceed in forma pauperis. The court now conducts an initial review of his Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff, a 47-year-old male, worked for defendant Bridgeport Public Schools ("BPS") from August 2013 to March 2015 as a curriculum and assessment coordinator. (Filing No. 1 at CM/ECF p. 6.) Plaintiff alleges that BPS, along with its

former and current superintendent, school board members, and high school principal, discriminated and retaliated against him and subjected him to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17.

Plaintiff claims that in December 2013, two BPS teachers falsely accused him of using an electronic device to initiate inappropriate contact with a minor female student, and BPS failed to follow statutory protocol for reporting such crimes for investigation, which resulted in harassment and a hostile work environment that irreparably damaged Plaintiff's reputation and resulted in loss of his job. (Filing No. 1 at CM/ECF pp. 5 & 8.)

Specifically, Plaintiff asserts that BPS has never given him documentation regarding the accusation, nor did it reveal the identity of Plaintiff's accusers until his termination hearing. (Filing No. 1 at CM/ECF p. 8.) In December 2013, when Plaintiff was first accused of wrongdoing, he twice asked school officials for information and was rebuffed. Later that month, Robinson started preparing a complaint of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). In January 2014, a BPS teacher told Plaintiff that he had heard about the allegations against Plaintiff from a BPS counselor. Robinson requested that the school superintendent begin an immediate investigation into the counselor's breach of confidentiality.

Also in January 2014, Plaintiff told a school board member about the EEOC complaint that Plaintiff had initiated, but not formally filed, after which Plaintiff received a letter from the superintendent stating that the investigation into Plaintiff's alleged conduct had been concluded. That same month, Plaintiff filed a "testing security violation report" with the superintendent and the Nebraska Department of Education. The superintendent ordered Plaintiff to withdraw the report, which he refused to do. (Filing No. 1 at CM/ECF p. 9.)

Plaintiff then asked, and was denied, permission from the superintendent to discuss with the school board the hostile work environment at BPS and how Plaintiff had been treated. Plaintiff then contacted the school board president, who allowed him to meet with the board in executive session. During this meeting, Plaintiff requested that the board investigate how he had been treated and that the board make clear to BPS staff that he had been found not guilty of misconduct. (Filing No. 1 at CM/ECF p. 10.)

In February 2014, the superintendent notified Plaintiff that an evaluation of his performance had been completed although Plaintiff had not participated in a performance review. In March 2014, Plaintiff again requested, but was denied, permission to meet with the school board to get an update on Plaintiff's prior request to investigate. Plaintiff then filed "certification investigation requests" with the Nebraska Department of Education against the school superintendent and principal "for their failure to follow Nebraska statutes pertaining to child abuse reporting and failure to follow various [BPS] school board policies." (Filing No. 1 at CM/ECF p. 11.) In May 2014, Plaintiff submitted a letter to the school board requesting a grievance hearing, but received no response.

In July 2014, Plaintiff was accused of insubordination when he refused to answer the new BPS lawyers' and superintendent's questions without his attorney present. (Filing No. 1 at CM/ECF p. 11.) On August 5, 2014, Plaintiff filed an EEOC complaint against BPS for discrimination based on age and gender. (Filing No. 1 at CM/ECF p. 12.) On August 11, 2014, Plaintiff filed an EEOC complaint against the Nebraska State Education Association and the Bridgeport Education Association for denying him union representation in meetings with school administrators in March 2014.

In August 2014, Plaintiff informed the superintendent of unusually high and suspicious special education test scores. During a teacher's union meeting on August 28, 2014, Plaintiff (who was not present) was "subjected to vitriolic, hateful

comments by several [BPS] teachers." (Filing No. 1 at CM/ECF p. 13.) Plaintiff's subsequent request that the superintendent perform "harassment investigations" into the teachers who made such comments was ignored. On August 31, 2014, Plaintiff complained to the Nebraska Department of Education about his mistreatment and requested an investigation of the offending personnel at the teacher's union meeting.

After a meeting with Plaintiff on September 4, 2014, regarding Plaintiff's investigation request, the superintendent placed Plaintiff on indefinite administrative leave with pay and barred him from BPS property. Plaintiff was then notified that the superintendent had distributed a memorandum to the BPS "community" instructing them to "refrain from communicating" with Plaintiff and "to secure communications from" Plaintiff, and also threatening to seize social media account information from people who communicated with Plaintiff. (Filing No. 1 at CM/ECF p. 14.)

During Plaintiff's administrative leave, two teachers contacted Plaintiff regarding testing security procedures, as both teachers had been informed that students were aware of state writing subject prompts prior to testing. Plaintiff told the teachers to contact the superintendent and/or the state to inform them of the security breach. On January 31, 2015, Plaintiff contacted the Nebraska Department of Education office himself to inform them of the testing breaches described by the teachers, despite the fact that Plaintiff was on forced administrative leave.

On February 2, 2015, the superintendent issued to Plaintiff a Notice of Intent to Terminate his employment. Plaintiff was not allowed to personally pick up a copy of his personnel file, but the file was delivered to his home by a sheriff's deputy on February 18, 2014. The file did not contain any letters of reprimand, counseling statements, or performance improvement plans, according to Plaintiff. (Filing No. 1 at CM/ECF p. 15.) At Plaintiff's termination hearing on March 6 and 7, 2015, Plaintiff finally learned the identity of his accusers, and his employment was terminated. (Filing No. 1 at CM/ECF p. 17.)

4

Plaintiff asserts that BPS's Findings of Fact in support of his termination include Plaintiff's alleged inappropriate conduct with a minor female student, a charge of which he had been cleared; insubordination, despite the lack of any reprimands during his employment; incompetent performance, for which Plaintiff had never been reprimanded or questioned; improper relationship with a textbook salesperson, which Plaintiff refuted with evidence presented at the hearing; and sending inappropriate emails to a co-worker, an offense that occurred during Plaintiff's prior contract year.

The right-to-sue notice attached to Plaintiff's Complaint reflects that Plaintiff filed suit in this court within 90 days of his receipt of the right-to-sue notice from the United States Equal Employment Opportunity Commission. *See* 42 U.S.C. § 2000e-5(f)(1) (a charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on a charge of discrimination).

Plaintiff asserts claims under Title VII for discrimination, retaliation, and a hostile work environment. (Filing No. 1 at CM/ECF pp. 19-21.)

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Twombly*, 550 U.S. at 570. However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

### III.  DISCUSSION OF CLAIMS

**A.  Exhaustion of Administrative Remedies**

Title VII plaintiffs must exhaust their administrative remedies with the EEOC before filing suit in this court. *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 989 (8th Cir. 2011). Plaintiff's complaint states that he filed an EEOC complaint

6

against BPS for discrimination based on "age and gender" on August 5, 2014.[1] (Filing No. 1 at CM/ECF p. 12.) However, Plaintiff has not attached to the Complaint a copy of his Charge of Discrimination filed with the EEOC, making it impossible to determine whether his claims in this court "grow out of or [are] like or reasonably related to the substance of the allegations in the administrative charge." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation and citation omitted).

Such a determination is necessary because "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Dorsey*, 278 F.3d at 838 (internal quotation and citation omitted). Therefore, "[t]he breadth of the civil suit is . . . as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Id.* (internal quotation and citation omitted).

The court shall allow Plaintiff to file an amended complaint attaching the August 5, 2014, Charge of Discrimination he filed with the EEOC so the court can determine if Plaintiff has exhausted his administrative remedies. Assuming Plaintiff's EEOC charge did include claims for discrimination, retaliation, and a hostile work environment based on Plaintiff's age and gender, the court shall analyze those claims next.

**B. Discrimination**

---

[1] Plaintiff's Complaint also alleges that he filed an EEOC charge against the Nebraska State Education Association and the Bridgeport Education Association on August 11, 2014, for denying him union representation in meetings with school administrators. As the Complaint is currently pled, this charge is irrelevant because it does not involve any defendant in this case.

**1. Sex/Gender**

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination "because of" one's sex "occurs when sex is 'a motivating factor for any employment practice, even though other factors also motivated the practice.'" *Tyler*, 628 F.3d at 990 (quoting 42 U.S.C. § 2000e-2(m)).

The court looks to the elements of a prima facie case of discrimination in assessing whether Plaintiff has pled enough facts to make entitlement to relief plausible. To state a prima facie claim of sex discrimination, Plaintiff must allege facts showing that (1) he is a member of a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011); *see also Tyler*, 628 F.3d at 990.

Plaintiff's Complaint states that he was involuntarily placed on administrative leave and then terminated due to a false allegation by co-workers that he inappropriately attempted to contact a minor female student via an electronic device, even though he was cleared of the accusation. There are no allegations whatsoever that these adverse employment actions were taken *because of* Plaintiff's gender; rather, Plaintiff's allegations focus on his mistreatment by BPS co-workers and administrators related to a false charge that had sexual connotations. The United States Supreme Court has

> never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are

> exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal quotation and citation omitted). In other words, Plaintiff will need to "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex." *Id.* (quoting 42 U.S.C. § 2000e-2(a)(1)).

Because Plaintiff fails to allege that BPS's adverse employment actions against him occurred because of his gender, the court shall grant Plaintiff leave to amend his Complaint to properly allege sexual discrimination under Title VII, if the facts support such a claim.

**2. Age**

Plaintiff apparently intends to assert a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, which protects individuals over 40 and prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a); *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010).

To set forth a prima facie claim of age discrimination, a plaintiff must establish that (1) he is over 40; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the class were treated more favorably. *Anderson*, 606 F.3d at 523. "The hallmark of an ADEA disparate-treatment claim is intentional discrimination against the plaintiff on account of the plaintiff's age." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1331 (8th Cir. 1996).

9

This requires proof that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176-78 (2009).

As with Plaintiff's purported sex-discrimination claim discussed above, Plaintiff has also failed to allege facts suggesting that BPS's adverse employment actions against him were *because of* his age and that other similarly situated employees who were under 40 were treated more favorably. Accordingly, Plaintiff may file an amended complaint properly alleging age discrimination under the ADEA, if the facts support such a claim.

**C. Retaliation**

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, an employee must show: "(1) he engaged in protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015).

Here, Plaintiff has alleged that he was placed on administrative leave and then fired (a materially adverse action) after he filed an EEOC Charge of Discrimination against BPS for discrimination based on age and gender on August 5, 2014 (protected conduct), thereby suggesting that BPS fired Plaintiff *because* he filed an EEOC Charge of Discrimination. While it remains to be seen whether BPS's adverse employment action against Plaintiff was motivated by retaliatory intent, Plaintiff's allegations are sufficient to state a claim to relief for retaliation that is plausible on its face.

10

**D. Hostile Work Environment**

To establish a prima facie case of hostile work environment based on age or sex, Plaintiff must show:

> (1) membership in a protected group; (2) the occurrence of unwelcome[][] harassment; (3) that the harassment occurred because of [his] sex [or age]; and (4) that the harassment affected a term, condition or privilege of [his] employment. This demanding standard requires extreme conduct rather than merely rude or unpleasant conduct. We look to the totality of the circumstances to consider whether the plaintiff has established that discriminatory intimidation, ridicule, and insult permeated the workplace.

*Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1131 (8th Cir. 2014) (internal quotations and citations omitted).

As with his discrimination claims, Plaintiff has failed to allege facts stating a plausible claim for a hostile work environment based on Plaintiff's age or sex because the Complaint does not indicate that the alleged harassment occurred *because of* his sex or age. Accordingly, the court shall grant Plaintiff leave to file an amended complaint alleging facts supporting a claim for hostile work environment based on Plaintiff's age or sex, if the facts support such a claim.

**E. Plaintiff's Claims Against Individual Defendants**

The court will provide Plaintiff with leave to replead his employment discrimination claims against his employer, BPS. However, the individual[2]

---

[2]The caption of Plaintiff's Complaint states that the individual defendants are sued in their "official capacities," but the body of the Complaint states that its allegations refer to "acts and failures to act of each Defendant acting individually." (Filing No. 1 at CM/ECF p. 8.)

11

defendants—Lambert, Corman, Norman, Anderson, Linders, Pohl, Barnette, Asche, and Miller—are not subject to liability under any of the statutes underlying Plaintiff's claims. Title VII only imposes liability upon employers, not individual supervisors or co-workers. *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998). The same rule applies to claims under the ADEA. *See, e.g., Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir. 2001); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); *see also Feller v. McCarthy*, No. 4:07CV3117, 2007 WL 3204463, at *3 (D. Neb. Oct. 30, 2007); *Rickert v. Midland Lutheran Coll.*, No. 8:07CV334, 2007 WL 2933229, at *1 (D. Neb. Oct. 5, 2007).

Consequently, Plaintiff's claims against all of the individual defendants will be dismissed, and his action will proceed only against Bridgeport Public Schools.

### IV. CONCLUSION

Plaintiff's Complaint does not indicate that he has exhausted his administrative remedies with the EEOC as to the claims asserted here. Even if Plaintiff had established exhaustion, he has not alleged facially plausible claims for discrimination or hostile work environment based on his age or gender. However, Plaintiff has stated a plausible claim for retaliation. Plaintiff shall be given leave to file an amended complaint in compliance with the order set forth below.

IT IS ORDERED:

1. Plaintiff's claims against individual defendants Lambert, Corman, Norman, Anderson, Linders, Pohl, Barnette, Asche, and Miller are dismissed with prejudice;

2. Plaintiff must file an amended complaint within 30 days of the date of this order that asserts plausible claims for relief under Title VII and the ADEA, if the facts support such claims. To the extent Plaintiff intended to allege something other than, or in addition to, claims under Title VII and the ADEA, he must so provide in his amended complaint;

3. Plaintiff shall attach to his amended complaint the Charge of Discrimination he filed with the EEOC against BPS for discrimination based on "age and gender" on August 5, 2014;

4. Plaintiff's failure to act in accordance with this order will result in dismissal of this action;

5. The clerk's office is directed to set the following pro se case management deadline: August 18, 2016: Check for amended complaint.

DATED this 15th day of July, 2016.

> BY THE COURT:
> s/ *Richard G. Kopf*
> Senior United States District Judge