IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PATRICK ROBINSON, | ) |
| Plaintiff, | ) 8:16CV177 |
| v. | ) |
| | ) **MEMORANDUM** |
| BRIDGEPORT PUBLIC SCHOOLS, | ) **AND ORDER** |
| a public school district in Nebraska, | ) |
| Defendant. | ) |

This action stems from the termination of the pro se Plaintiff's employment as a curriculum and assessment coordinator for Bridgeport Public Schools ("BPS"). On July 15, 2016, the court conducted an initial review (Filing 6) of Plaintiff's Complaint (Filing 1) and granted Plaintiff leave to amend his Complaint to attach the August 5, 2014, Charge of Discrimination he filed with the EEOC[1] and to properly allege sexual discrimination under Title VII, age discrimination under the ADEA,[2] and a hostile work environment based on Plaintiff's age or sex. The court found that Plaintiff sufficiently stated a claim for retaliation, but dismissed all defendants except BPS because the individual defendants could not be held liable under Title VII or the ADEA. The court must now determine whether summary dismissal of Plaintiff's Amended Complaint is appropriate under 28 U.S.C. § 1915(e)(2).

Plaintiff's Amended Complaint (Filing 7) contains substantially similar factual allegations as those contained in his original Complaint, and they will not be repeated here. (See Filing 6 at CM/ECF pp. 1-5 (factual allegations summarized).) In his

---

[1]EEOC is the United States Equal Employment Opportunity Commission.

[2]ADEA is the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*.

Amended Complaint, Plaintiff has asserted the following additional claims: denial of procedural due process under 42 U.S.C. § 1983; tortious interference with employment; fraudulent misrepresentation; and negligence. Plaintiff has abandoned his ADEA and Title VII claims based on gender and age, but has reasserted his Title VII retaliation claim.

**A.  § 1983 Claim for Violation of Procedural Due Process Rights**

    **1.  Municipal Liability**

Liberally construed, Plaintiff's Amended Complaint alleges that BPS deprived him of his property interest in employment with the school district and his liberty interest in his good name and reputation. The only remaining defendant after initial review of Plaintiff's first Complaint is Bridgeport Public Schools. Municipalities and other local governmental units like school districts and school boards are considered "persons" to whom 42 U.S.C. § 1983 applies. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978); *Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 613 (8th Cir. 2003) (school district can be sued under § 1983); *Manning v. Dakota Cty. Sch. Dist. No. 22-0011*, 782 N.W.2d 1, 9 (Neb. 2010) (school boards can be sued under § 1983; citing *Monell*).

While Plaintiff makes allegations that various teachers, a counselor, a principal, and two superintendents participated in the deprivation of his constitutional rights, § 1983 does not allow municipal liability under a theory of respondeat superior, which means that a school district cannot be liable simply for employing someone who violates a plaintiff's constitutional rights. To state a claim against a school district for acts of its employees, a plaintiff must allege that a municipal policy or custom caused the unconstitutional acts of its employees. *Monell*, 436 U.S. at 691.

"Official policy involves 'a deliberate choice to follow a course of action made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By and Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v City of Cincinnati*, 475 U.S. 469, 483 (1986)). In order to establish the existence of a governmental custom, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646. *See also Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003) (plaintiff need not plead the "specific existence of an unconstitutional policy or custom," but must contain "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the School District").

Here, Plaintiff does not allege facts from which one could draw an inference that his suspension and termination resulted from a BPS policy or custom, nor does he assert that BPS employees were acting in accordance with such a policy or custom. The Amended Complaint alleges no facts suggesting that BPS employees have a custom or pattern of violating their colleagues' procedural due process rights in a way that could be characterized as a continuing, widespread, persistent pattern of misconduct. Rather, Plaintiff's allegations describe isolated incidents of misconduct

3

directed at him alone. Therefore, Plaintiff fails to state a claim against BPS insofar as he seeks to hold BPS liable for the misconduct of its employees.

Plaintiff's Amended Complaint also asserts that two superintendents and the school board itself committed unconstitutional acts. Municipal liability under § 1983 may result from a "single decision to take unlawful action made by municipal policymakers" where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 & 483 (1986) ("where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly"). *See also Hollingsworth v. City of St. Ann*, 800 F.3d 985, 992 (8th Cir. 2015) (municipality can be liable under § 1983 when municipal action itself violates federal law); *Crawford v. Van Buren County*, 678 F.3d 666, 669 (8th Cir. 2012) ("Although rare, a public official's single incident of unconstitutional activity can establish the requisite policy if the decision is taken by the highest officials responsible for setting policy in that area of the government's business." (internal quotation marks and citation omitted)); *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992) (same).

Therefore, Plaintiff may assert a claim against BPS under 42 U.S.C. § 1983 to the extent he alleges that two superintendents and the school board—as the highest officials responsible for setting policy in the areas of employee suspensions and terminations—violated the Constitution when they did not provide Plaintiff due process before suspending and terminating Plaintiff's employment.[3]

---

[3] Which BPS officials made which decisions, and whether those officials had policymaking authority under Nebraska law, are questions to be determined during motion practice. *Pembaur*, 475 U.S. at 483 ("whether an official had final policymaking authority is a question of state law"). Preliminarily, I note that school boards in Nebraska have the authority to adopt hearing procedures regarding the

## 2. Procedural Due Process

Plaintiff alleges a procedural due process claim against BPS under § 1983. In order to state a claim for violation of one's right to procedural due process, a plaintiff must allege that the defendant (1) deprived the plaintiff of life, liberty, or property (2) without sufficient process. *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004).

> Due process is a flexible concept, requiring only "such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). The fundamental requirement of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333, 96 S. Ct. 893 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate "the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). *See Parratt v. Taylor*, 451 U.S. 527, 543-44, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981).

*Clark*, 375 F.3d at 702.

### a. Deprivation of Liberty Interest

In *Board of Regents v. Roth*, 408 U.S. 564 (1972), the Court stated that a nontenured teacher's liberty interest might be implicated if the teacher's integrity, honor, or good name was at stake—as when a state, in declining to renew a teacher's

---

cancellation, termination, and nonrenewal of teachers' contracts, and school-board members make the decision whether to cancel, terminate, or not renew teachers' contracts. Neb. Rev. Stat. § 79-832 (Westlaw 2016).

5

contract, makes a charge against the teacher of dishonesty or immorality that might seriously damage his associations or standing in the community, or the state imposes a "stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." In such cases, "notice and an opportunity to be heard are essential." *Id.* at 573 (internal quotation marks and citations omitted).

To state a claim for deprivation of Plaintiff's liberty interest in his good name and reputation, Plaintiff must allege that: "(1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status." *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1091-92 (8th Cir. 2014) (internal quotation marks and citation omitted). The "stigma" must be "significant" and usually involves a "character-demeaning charge." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 802 (8th Cir. 2004) (to establish liberty interest due process claim, plaintiff must prove that school district made public accusations about her behavior and her subsequent change in employment that make it difficult for employee to escape stigma).

Damage to reputation alone is insufficient to support a claim for a due process deprivation of liberty interest in one's reputation. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). Rather, the loss of reputation must be coupled with some other tangible element, such as employment, in order to rise to the level of a protected liberty interest. *Id.* at 701; *Roth*, 408 U.S. at 575 (the fact that a teacher was not rehired for one year at one university did not deprive teacher of "liberty" for purposes of due process analysis when he "remain[ed] as free as before to seek another" job). The Eighth Circuit Court of Appeals has found that "[a]n employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Winegar v. Des Moines Indep. Comm. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir.

1994) (noting that stigma has been found when employer accused employee of dishonesty, immorality, criminality, racism, and child abuse).

Plaintiff alleges that his contract was not renewed based on false and damaging allegations that he was "having an inappropriate relationship with a female student" and after the school principal "interrogated Plaintiff about online gaming and electronic relationships with students." (Filing 7 at CM/ECF p. 3.) Plaintiff states that he was not provided with "a report of charges or any other accusatory instrument" regarding these allegations; the contents of the allegations were made known to BPS employees and were discussed at a community gathering; although the superintendent gave a letter to Plaintiff claiming to resolve the investigation into Plaintiff's alleged inappropriate conduct with a female student, such alleged conduct served as a basis for his termination; Plaintiff was denied opportunities to meet with BPS school board members to "express grievances" regarding these allegations; and with little or no notice to Plaintiff, the superintendent and a school board member conducted a meeting of 45 BPS employees that "humiliated and vilified the Plaintiff." (Filing 7 at CM/ECF pp. 3-5, 9-10, 12.)

These allegations are sufficient to plausibly claim that BPS deprived Plaintiff of his liberty interest in his good name and reputation without due process, and this claim may proceed.

### b. Deprivation of Property Interest

In order to state a claim that Plaintiff was deprived of his property interest in his continued employment such that the school district was required to accord him due process before it terminated his employment, Plaintiff must establish that he possessed a "legitimate claim of entitlement" to continued employment by Bridgeport Public Schools. *Roth*, 408 U.S. at 577. A plaintiff may "establish such a claim of entitlement by showing that he had a reasonable expectancy of continued employment by the

7

Board based upon [state] law, an express contract with the Board, or common 'understandings' derived from the employer-employee relationship." *Derrickson v. Bd. of Educ. of City of St. Louis*, 703 F.2d 309, 312 (8th Cir. 1983); *see also Hilton v. Pine Bluff Pub. Sch.*, 796 F.2d 230, 232 (8th Cir. 1986) ("Whether a complaint states deprivation of a property interest actionable under section 1983 is determined by the state law or procedures on the basis of which the interest is claimed.").

Typically, a property interest in continued employment "arises from contractual or statutory limitations on the employer's ability to terminate an employee." *Winegar, 20 F.3d at 899*. However, a property interest in employment may also be created by "implied contract, arising out of customs, practices and de facto policies." *Id.* (citing *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)). "When such a property interest exists, the employee is entitled to a hearing or some related form of due process before being deprived of the interest." *Id.* (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

Nebraska law would appear to grant a property interest in continued employment to "permanent certificated employees." Neb. Rev. Stat. § 79-829 (Westlaw 2016) ("The contract of a permanent certificated employee shall be deemed continuing and shall be renewed and remain in full force and effect unless amended or terminated in accordance with the provisions of sections 79-824 to 79-842" for specific enumerated reasons); *Miller v. Sch. Dist. No. 18-0011 of Clay Cty.*, 775 N.W.2d 413, 418 (Neb. 2009) ("the intent of the tenured teacher statutes, including § 79-829, is to guarantee a tenured, or permanent certificated, teacher continued employment except where specific statutory grounds for termination are demonstrated"). Therefore, it is plausible that Plaintiff had a property interest in his continued employment.[4]

---

[4]The exact nature of Plaintiff's employment—like whether he was a "permanent certificated employee" such that he would be characterized as "tenured" under Nebraska law—as well as the contents of his employment contract and whether Plaintiff might be subject to "implied contractual terms created by virtue of customs"

Assuming Plaintiff had a property interest in his continued employment with BPS, he alleges that he was deprived of that interest without due process because two superintendents and the school board repeatedly ignored and denied Plaintiff's complaints, inquiries, and requests for a hearing; suspended him without prior notice of a hearing, without presentation of evidence, and without notice of the charges against him; and terminated his employment without allowing Plaintiff to present and review evidence, but allowing unauthorized people to participate in the termination decision and considering evidence not admitted at the hearing. This is sufficient to allege a plausible claim for deprivation of Plaintiff's property interest in his continued employment without due process of law, and this claim shall proceed. *Christiansen v. W. Branch Commun. Sch. Dist.*, 674 F.3d 927, 936 (8th Cir. 2012) (terminated teacher making procedural due process claim must allege well-pleaded facts regarding what process plaintiff was denied before and during hearing).

### B. Title VII Retaliation

As previously concluded in the court's Memorandum and Order on initial review (Filing 6), Plaintiff has stated a plausible claim for relief for retaliation under Title VII, and this claim shall proceed.

### C. State-Law Claims

Plaintiff also asserts state-law claims for tortious interference with employment, fraudulent misrepresentation, and negligence. At this stage of the proceedings, the court makes no finding with respect to its jurisdiction over Plaintiff's state-law claims or whether they state a plausible claim for relief.

Accordingly,

---

and practices of BPS, *Packett v. Stenberg*, 969 F.2d 721, 725 (8th Cir. 1992), are matters to be addressed later in the case.

IT IS ORDERED:

1. Plaintiff's claims against defendant Bridgeport Public Schools for (a) retaliation under Title VII and (b) violation of Plaintiff's right to procedural due process with regard to (i) his liberty interest in his good name and reputation and (ii) his property interest in continued employment may proceed to service of process.

2. Because defendant Bridgeport Public Schools is a state-created governmental organization under Fed. R. Civ. P. 4(j), proper service may be accomplished either by (a) delivering a copy of the summons and of the amended complaint to its chief executive officer; or (b) serving a copy of each in the manner prescribed by Nebraska law for serving a summons or like process on such a defendant. Under Neb. Rev. Stat. § 13-903, school districts are political subdivisions of the state, and service on such entities may be accomplished "by personal, residence, certified mail, or designated delivery service upon the chief executive officer, clerk, secretary, or other official whose duty it is to maintain the official records, or any member of the governing board or body, or by certified mail or designated delivery service to the principal office of the political subdivision." Neb. Rev. Stat. § 25-510.02.

3. To obtain service of process on Defendant, Plaintiff must complete and return the summons forms which the Clerk of the court will provide. The Clerk of the court shall send **one** summons form and **one** USM–285 form to Plaintiff together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of the court. In the absence of the forms, service of process cannot occur.

4. Upon receipt of the completed forms, the Clerk of the court will sign the summons form, to be forwarded with a copy of the Amended Complaint (Filing 7) to the U.S. Marshal for service of process. The Marshal shall serve the summons and Amended Complaint without payment of costs or fees. The Clerk of the court will copy the Amended Complaint, and Plaintiff does not need to do so.

5. Fed. R. Civ. P. 4(m) requires service of a complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

6. Plaintiff is hereby notified that failure to obtain service of process on Defendant within 120 days of the date of this order may result in dismissal of this matter without further notice as to such defendant. Defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

7. The Clerk of the court is directed to set a case management deadline in this case with the following text: January 26, 2017: Check for completion of service of summons.

8. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

9. Pursuant to this Memorandum and Order directing service, and at the direction of the court, this case is removed from the pro se docket. The clerk's office shall randomly assign new judges to this case and request a reassignment order from Chief District Court Judge Laurie Smith Camp.

DATED this 26th day of September, 2016.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge